366 So.2d 951 (1978)
Juanita C. Phillips WICKHAM
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA.
No. 12217.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
Dissenting Opinion December 4, 1978.
Rehearing Denied January 16, 1979.
*952 Frank J. Gremillion, Baton Rouge, of counsel for plaintiff-appellee, Juanita C. Phillips Wickham.
Lester J. Gauthier, Jr., Lafayette, of counsel for defendant-in-reconvention-appellant, Beverly P. Phillips.
Charles W. Wilson, Jr., Baton Rouge, of counsel for defendant-appellee, Prudential Insurance Co. of America.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
This litigation involves two conflicting claims to the proceeds of a life insurance policy. The principal question presented is whether the insured, Dr. Jack H. Phillips, changed the beneficiary named in the policy from his first wife, Mrs. Juanita C. Phillips Wickham (Mrs. Wickham), to his second wife, Mrs. Beverly P. Phillips (Mrs. Phillips). From a judgment in favor of Mrs. Wickham ruling that the beneficiary had not been changed, Mrs. Phillips has appealed. We affirm.
In 1957, the policy in question was issued by The Prudential Insurance Company of America and delivered to Dr. Phillips in Mississippi, where he resided. At the time, Dr. Phillips was married to Mrs. Wickham, who was named as the beneficiary.
In 1971, Dr. Phillips and Mrs. Wickham were divorced in Mississippi. They contemporaneously entered into a written settlement of their jointly owned property. This agreement contained no mention of the subject policy. Mrs. Wickham, who continued to reside in Mississippi, retained possession of the policy until the time of the trial.
After the divorce, Dr. Phillips moved from Mississippi to Lafayette, Louisiana, and subsequently married his second wife. He lived with her in Lafayette until his death.
On January 16, 1975, Dr. Phillips signed and forwarded to Prudential a change of beneficiary form naming his second wife, Mrs. Phillips, as the primary beneficiary. This form was immediately returned to him along with a request for the policy so that the change of beneficiary might be endorsed thereon. The pertinent provision of the policy with respect to change of beneficiary states:
"The Beneficiary under this Policy may be changed from time to time, upon proper written request, provided such request is submitted to the Home Office together with this Policy for endorsement, but such change shall become operative only if this Policy is endorsed by the Company. After such endorsement has been made, the change shall take effect and any interest *953 of any previous Beneficiary shall cease as of the date of such written request whether or not the Insured is living at the time of such endorsement. Any change of Beneficiary shall be subject to the rights of any assignee of record at the Home Office."
Dr. Phillips did not submit the policy and did nothing for several months to change the beneficiary. Mrs. Phillips testified that he did not know where the policy was and believed it to be lost.
In April of 1975, Dr. Phillips suffered a heart attack and was hospitalized until his death on May 20, 1975.
While hospitalized on May 12, 1975, Dr. Phillips, with the aid of Wayne Hebert, a family friend and an insurance agent with another company, again signed a change of beneficiary form naming Mrs. Phillips as beneficiary. On this occasion, Dr. Phillips also signed a lost policy request, seeking a duplicate copy of the policy so that the beneficiary change might be endorsed thereon by the company. Hebert received both of these forms. He forwarded the change of beneficiary form to Prudential and gave the lost policy form to Pamela P. Harris, Dr. Phillips' daughter by his first marriage, and requested that she obtain her mother's signature and return the form to him. Prudential requires the signature of both the insured and the named beneficiary on the lost policy request form. This latter form, apparently removed from Dr. Phillips' nightstand (where it had been placed by Pamela) and discarded by hospital personnel, did not reach Mrs. Wickham and was never sent to Prudential. The company refused to recognize the change of beneficiary.
After Dr. Phillips' death, Mrs. Wickham instituted this suit against Prudential to recover the proceeds of the policy. Prudential reconvened, provoked a concursus, impleaded Mrs. Phillips, and deposited the proceeds of the policy with the court.
In the trial court, Mrs. Wickham urged (1) that the ownership of the policy was given to her in trust for the benefit of their two children; (2) that if the signature of Dr. Phillips on the change of beneficiary form is genuine, he was mentally incapable of executing the same; and (3) that under the conflict of laws issue presented, Louisiana law should apply.
The trial judge, in his written reasons for judgment, held that Dr. Phillips was at all times the owner of the policy and did not intend to create a trust when he left the policy with Mrs. Wickham following their divorce. The judge a quo also concluded that on May 12, 1975, when Dr. Phillips executed the change of beneficiary form, he possessed the mental capacity to do so. These conclusions are based on factual determinations which are amply supported by the record.
The remaining issue relates to the choice of law to be applied, Mississippi or Louisiana. Ironically, Mrs. Wickham, a Mississippi resident, urges that Louisiana law of strict construction should apply; and Mrs. Phillips, a Louisiana resident, contends that Mississippi law of substantial compliance is applicable. The position taken by each is not without some authoritative basis.
The rule of strict construction followed in Louisiana is based on the theory that the policy of insurance is a contract which constitutes the law between the parties; thus, if the policy provides that a change of beneficiary is not effective until the policy itself is endorsed, strict construction requires just that. Douglass v. Equitable Life Assurance Society, 150 La. 519, 90 So. 834 (1921); Giuffria v. Metropolitan Life Insurance Company, 188 La. 837, 178 So. 368 (1937); and Morein v. North American Co. for Life & Health Insurance, 271 So.2d 308 (La.App. 3d Cir. 1972).
The rule of substantial compliance applicable in Mississippi is reflected in the maxim, "Equity will regard that as done which ought to have been done." Faulkner v. Faulkner, 192 Miss. 358, 5 So.2d 421 (1942). Thus, if the owner of the policy has done all that is within his power under the circumstances to change the beneficiary, the requirement of endorsement contained in the policy should not thwart his efforts. *954 This rule is followed in the vast majority of jurisdictions. See, Appleman, Insurance, Secs. 940, et seq. The rule itself is subject to many variations according to the particular facts of a given case. See, 19 A.L.R.2d, Secs. 1-52 and Supplement.
When confronted with a conflict of laws problem (such as here) the approach taken by Louisiana courts has been that the nature, validity and interpretation of insurance contracts are governed by the law of the place where the contract was entered into. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Chase v. Safeco Ins. Co. of America, 345 So.2d 969 (La.App. 2d Cir. 1977); Porter v. State Farm Mutual Automobile Ins. Co., 342 So.2d 1265 (La.App. 4th Cir. 1977). Support for this view is found in C.C. art. 10, which provides in pertinent part:
"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed."

* * * * * *
Some Louisiana courts have retreated from the above cases advocating strict application of conflicts rules (e. g. lex loci contractus) and have applied an "interest analysis" in determining the choice of law. See, Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973); Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir. 1976), writs denied, 332 So.2d 805, 332 So.2d 820, 333 So.2d 242 (La.1976). Cf., Restatement, Conflict of Laws 2d, Vol. 1, chap. 8.
The district judge felt compelled to adopt the stricter rule of Louisiana under the "interest analysis" theory. He concluded that inasmuch as the owner of the policy and the newly designated beneficiary were Louisiana residents and the change of beneficiary form was executed in this state, Louisiana had "a greater interest than Mississippi." Having made this determination, the judge a quo felt bound to apply the Louisiana rule of strict construction as expressed in the hereinabove cited authorities. We agree.
The ownership and more particularly the change of beneficiary requirements of life insurance policies are areas that require a great degree of predictability, certainty and consistency in the law. This need is emphasized by virtue of the mobile nature of modern-day life where countless families by choice of employment are forced to move from one state to another. It could be argued that the application of C.C. Art. 10, above, (the law of the place where the policy was issued and delivered) lends that stability. We think not. The facts in the instant case graphically illustrate otherwise.
The trial judge found that Dr. Phillips, a Louisiana resident, fully intended to change the beneficiary. We concur in this conclusion. Yet, to satisfy that desire the intended beneficiary, also a Louisiana resident, must rely on the more favorable law of a foreign jurisdiction.
We are not unmindful of the cases cited by counsel for Mrs. Phillips evidencing ample authority to apply C.C. art. 10 and adhere, in the instant cause, to the principle of lex loci contractus (Mississippi). However, this we do not choose to do. We believe that once it has been determined that Louisiana has the most substantial interest in a controversy, then Louisiana law should be applied. Like the trial court, we feel bound by the established jurisprudence requiring strict construction. Any change in these authorities addresses itself to the Supreme Court.
For the above reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
EDWARDS, J., dissents and assigns reasons.
EDWARDS, Judge, dissenting.
The majority resolves the conflict of laws issue in favor of Louisiana law by applying an "interest analysis" theory in determining the choice of law. I disagree.
Louisiana, unlike most American jurisdictions, has provided statutorily for the resolution of conflicts problems involving contracts. LSA-C.C. art. 10 provides:
"The form and effect of public and private written instruments are governed by *955 the laws and usages of the places where they are passed or executed.
"But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
"The exception made in the second paragraph of this article does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign State or country, disposes by will or testament, or by any other act causa mortis made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act causa mortis, and at the time of his death, he resides and is domiciliated out of this State."
The jurisprudence concerning insurance contracts is in accord with this rule. See Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Chase v. Safeco Ins. Co. of America, 345 So.2d 969 (La.App. 2nd Cir. 1977); Porter v. State Farm Mutual Automobile Ins. Co., 342 So.2d 1265 (La.App. 4th Cir. 1977).
The two cases cited in support of the "interest analysis" theory do not address the above codal provision. Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973) dealt with conflicts in a tort situation (lex loci delicti). The court in Sutton v. Langley, 330 So.2d 321 (La.App. 2nd Cir. 1976) interpreted Jagers as authority for abandoning the rigid application of the lex loci contractus rule in favor of an interest analysis as contained in the Restatement, Conflicts of Laws 2d, Vol. 1, chap. 8. However, the court failed to mention or discuss the significance of LSA-C.C. art. 10.
This approach effectively reads article 10 out of the code and supplants it with a foreign treatise. This, I believe, is incorrect.
The proper application of LSA-C.C. art. 10 in the instant case would result in the selection of Mississippi law, since the insurance contract was executed and delivered in Mississippi at a time when Dr. Phillips was a resident of that state.
A Mississippi court applying Mississippi law to the instant facts would determine that the attempted change of beneficiary was effective based on the principles of equity and the doctrine of substantial compliance as stated in Faulkner v. Faulkner, 192 Miss. 358, 5 So.2d 421 (1942). See also Gayden v. Kirk, 207 Miss. 861, 43 So.2d 568 (1949). The doctrine of "substantial compliance" endeavors to give full weight to the intent of the insured when such intent to change a beneficiary is expressed in the manner required by the insurer and the insured has done everything reasonably within his power to accomplish his purpose. In such instances, the court will employ equity in a contest between the old beneficiary and the new one, and treat as done that which ought to have been done, thereby giving effect to the intent of the insured.
The trial court found that Dr. Phillips indeed intended to change the beneficiary named in the policy to his second wife, Beverly Phillips. I believe that Dr. Phillips, by signing both the change of beneficiary form and the lost policy request form, did all that was reasonably within his power to change the beneficiary, and that he substantially complied with the prerequisites to the change of beneficiary as stated in the policy so that his expressed intent should govern.
I would reverse the judgment of the trial court and render judgment in favor of Beverly Phillips.