**Jane Barlow BLOUNT, Plaintiff,**

**v.**

**Tamara BARTHOLOMEW, Third Party Defendant.**

Civ. A. No. 85–220.

United States District Court,
E.D. Kentucky,
Lexington Division.

April 15, 1988.

John G. Atchison, Jr., Gess, Mattingly, Saunier & Atchison, Lexington, Ky., for Jane Barlow Blount.

R. Burl McCoy, McCoy, Baker & Newcomer, Lexington, Ky., for Tamara Bartholomew.

MEMORANDUM OPINION

SCOTT REED, District Judge.

This litigation involves two conflicting claims to the proceeds of a life insurance policy. This matter is before the court on the motion of third party defendant Tamara Bartholomew for partial summary judgment and on the motion of plaintiff and Rule 14 defendant Jane Barlow Blount for summary judgment. These motions

have been fully briefed and are ripe for a decision.

The aforementioned parties are in dispute over their alleged entitlement to the proceeds of a life insurance policy from Fidelity Union Life Insurance Company purchased by William B. Blount, Jr., on February 15, 1981, while he was residing in Utah. Although this controversy now only concerns Ms. Blount and Ms. Bartholomew, the record reflects that at one point in this litigation, Fidelity Union Life Insurance Company (hereinafter "Fidelity Union") was a party defendant herein. Blount initiated this action against Fidelity Union on the grounds that she was the sole beneficiary of the proceeds of a life insurance policy sold by Fidelity Union to her brother, William B. Blount, Jr.

Subsequently, defendant Fidelity Union moved to join Tamara Bartholomew as an indispensable party to this action, pursuant to FRCivP 19, and to file a third party complaint against her. The basis for this action by Fidelity Union against Bartholomew was that she, too, claimed to be a beneficiary of a portion of the proceeds of the Fidelity Union Life Insurance policy on the life of William B. Blount, Jr.

On July 23, 1985, the court granted this motion of Fidelity Union and ordered its amended third party complaint to be filed. This complaint was in the nature of an interpleader under the provisions of Title 28 United States Code, § 1335. Fidelity Union requested that it be allowed to pay the life insurance proceeds into the Registry of the court and that it be dismissed as a party to this action. Fidelity Union stated that the value of the life insurance policy on William B. Blount, Jr., on his date of death, February 25, 1985, was $48,825.00; however, these proceeds were subject to a promissory note payable to Fidelity Union by the insured in the amount of $479.90; therefore, the total proceeds payable at the date of death were $48,345.10.

On December 20, 1985, the court ordered that Fidelity Union's tendered payment of $51,239.33 (representing the life insurance proceeds of $48,345.10 plus interest) be deposited into the Registry of the court in a money market account at Second National Bank and Trust Company, Lexington, Kentucky, pending further orders of the court. On July 23, 1986, the court dismissed Fidelity Union as a party defendant herein and ordered that Fidelity Union be relieved from any further liability with respect to the claims of plaintiff and third party defendant.

The record indicates that the reason for the interpleader action by Fidelity Union was a conflict between its record of the policy's named beneficiaries prior to the insured's death and the claim filed by plaintiff subsequent to the insured's death. Fidelity Union's records indicated that the named beneficiaries and their designated interests were as follows: Jane Blount, sister—one-half interest; Tamara Bartholomew, fiancee—one-half interest.

However, on or about May 6, 1985, plaintiff Jane Blount filed a claim with Fidelity Union for the proceeds of the life insurance policy stating that she was the sole beneficiary of these proceeds.

Thus, the court is called upon to determine whether both plaintiff and third party defendant are each entitled to one-half of these life insurance proceeds or whether the plaintiff alone is entitled to the entire proceeds as the sole beneficiary of the life insurance policy.

## DISCUSSION

Upon a review of the pleadings, the deposition of Steven Marquardt, Fidelity Union's agent, and the fully-briefed motion of Bartholomew for partial summary judgment and the motion of Blount for summary judgment, it seems that on February 15, 1981, William B. Blount, Jr., purchased the life insurance policy from Fidelity Union. At this time, the insured was living in Utah and was apparently engaged to Tamara Bartholomew. At the time the policy was issued, Mr. Blount named his then fiancee, Tamara Bartholomew, as the primary beneficiary, with his sister, Jane Blount, as the contingent beneficiary.

On March 2, 1981, when agent Marquardt met with the insured to deliver the

policy to him, Mr. Blount advised Marquardt that instead of the previous beneficiary designation, he now wanted the insurance proceeds to be divided equally between his fiancee Tamara and his sister Jane.

In response to this request, agent Marquardt provided the insured with a change-of-beneficiary form which the insured executed at some point in time between March 2, 1981 and April 6, 1981, when this change-of-beneficiary form was recorded in Fidelity Union's corporate office in Dallas, Texas.

Nearly one year after the insured purchased this life insurance policy, he and Tamara Bartholomew broke their engagement and terminated their relationship. He returned to Lexington, Kentucky, in early 1982, where he resided until his death on February 25, 1985.

During a conversation with agent Marquardt in March of 1984, the insured advised Marquardt that he again wanted to change the beneficiary of this policy. In response to this request, Marquardt mailed a change-of-beneficiary form to the insured. Marquardt testified that before he mailed this form, he filled in the policy number and the insured's name and address; he also signed this form as a witness.

It appears that the insured filled out this change-of-beneficiary form, naming his sister, Jane Blount, as the primary beneficiary and his parents, William and Shirley Blount, as contingent beneficiaries.

Although the insured executed this change-of-beneficiary form, he apparently did not send this completed and executed form to either his agent (Marquardt) or Fidelity Union's home office in Dallas, Texas.

The insured died on February 25, 1985. In going through the insured's papers subsequent to this death, his father, William B. Blount, Sr., found the Fidelity Union Life insurance policy and the change-of-beneficiary form that Marquardt had mailed to the insured in March of 1984.

Based on the answers of Fidelity Union to plaintiff's interrogatories, it seems that after the insured's father, William B. Blount, Sr., found the insurance policy and change-of-beneficiary form, these documents were placed in the hands of plaintiff's attorney, who forwarded the change-of-beneficiary form to Fidelity Union with a letter dated March 14, 1985. The change-of-beneficiary form was received by Fidelity Union on March 21, 1985 and duly recorded before any proceeds had been paid on this policy.

This action was spawned by the discovery of the change-of-beneficiary form naming Jane Blount as the sole beneficiary. There is no doubt but that Jane Blount is entitled to at least one-half of the life insurance proceeds; however, she contends that based on Kentucky law, which she submits should be applied to this action, she is the sole beneficiary and thus entitled to all of the proceeds. On the other hand, Tamara Bartholomew urges that under the law of Utah, which she argues should be applied to this situation, the insured failed to effect a change-of-beneficiary to make Jane Blount his sole beneficiary; therefore, she remains the beneficiary of one-half of the proceeds of his life insurance policy, pursuant to the change-of-beneficiary form that was received by Fidelity Union's home office on April 6, 1981. Therefore, the court must determine if Kentucky law controls.

## CHOICE OF LAW

In Tamara Bartholomew's motion for partial summary judgment, she takes the position that the statutory and case law of Utah are controlling here and dictate that no change-of-beneficiary was effected; therefore, she is beneficiary of one-half of the insurance proceeds. She relies on Utah Code § 31–19–26 for the proposition that the insured's actions were ineffective to change his beneficiaries. Utah Code § 31–19–26 provides, as follows:

31–19–26. Insurance contract—Modification of.—No modification of any insurance contract shall be effective unless in writing executed by the insurer and if it contains conditions limiting or reducing

benefits or protection otherwise applicable such writing shall also be executed by the insured.

In conjunction with this statute, Ms. Bartholomew also states the well-settled rule in Kentucky that in deciding a choice of law question, Kentucky courts will apply the law of the state that has the most significant relationship to the transaction and the parties to the transaction. *Lewis v. American Family Insurance Group*, 555 S.W.2d 579, 581 (Ky.Supreme 1977).

With this premise in mind, Bartholomew relies on *Uckerman v. Lincoln National Life Insurance Co.*, 588 P.2d 142 (Utah 1978), as further support for her position that under Utah law, the insured failed to meet the requisite formalities necessary to change his beneficiaries from Tamara Bartholomew and Jane Blount, as co-beneficiaries to Jane Blount as sole beneficiary.

The *Uckerman* court was confronted with a situation where the insured had placed in his wallet a document that stated that he "would like" his estranged wife "to be taken off my beneficiaries." The *Uckerman* court held that the insured's actions were insufficient to effect a change in beneficiaries under a group life insurance policy that had been issued on decedent's life through his employer.

Without reaching that issue, the *Uckerman* court intimated that the decedent's writing might be deemed testamentary; however, even if it were so interpreted, the court noted that insurance proceeds are non-testamentary in nature; therefore, they cannot be devised by will. The court stated, "The only way a beneficiary can be changed or eliminated is as provided in the contract of insurance or as mandated by Section 31–19–26 of the Utah Code." 588 P.2d at 144. Consequently, the *Uckerman* court held that any attempt to change the designation was void.

To counter Bartholomew's motion for partial summary judgment, plaintiff contends that this court must apply Kentucky's approach to resolving this choice of law question. *Klaxon v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Plaintiff properly points out that Kentucky follows the majority rule of "grouping of contacts" or "interest analysis" in resolving conflicts of law questions. The evolution of Kentucky's view on conflicts of law questions and application of the "interest analysis" approach can be traced to *Wessling v. Paris*, 417 S.W.2d 259 (Ky. 1967); *Arnett v. Thompson*, 433 S.W.2d 109 (Ky.1968); and *Foster v. Leggett*, 484 S.W.2d 827 (Ky.1972).

In *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069 (6th Cir.1983), the Sixth Circuit noted that the Kentucky Supreme Court has extended the doctrine contained in the *Wessling, Arnett & Foster* trilogy of cases, as follows:

> Indeed, the Kentucky Supreme Court has recently gone much further and held that Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary, even if the parties have voluntarily agreed to apply the law of a different state. *Breeding v. Massachusetts Indemnity and Life Insurance Company*, 633 S.W.2d 717 (Ky.1982). Thus, it is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary.

*Harris Corp. v. Comair, Inc.*, 712 F.2d at 1071.

In *Harris Corporation, supra*, the Sixth Circuit recognized that Kentucky now follows the "interest analysis" approach, and

> Under this approach the court hearing the case must apply the law of the jurisdiction which, "because of its relationship or contract with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Breeding*, 633 S.W.2d at 719.

*Id.* at 1072.

Thus, this court must now apply the "interest analysis" to arrive at the appropriate choice of law applicable herein.

## INTEREST ANALYSIS

■ In evaluating what interest Utah would have in regard to the insured and

the policy itself, the following contacts with Utah are present:

1. The insured purchased the policy in Utah, while he was living there in 1981 from a Fidelity Union agent whose office was located in Utah.

2. The policy was delivered to the insured in 1981 in Utah.

3. In 1981, one of the named beneficiaries, Tamara Bartholomew, was then the insured's financee and ostensibly a Utah resident.

In evaluating the interest Kentucky may have in this scenario, the court notes the following Kentucky contacts:

1. The insured moved from Utah to Kentucky in early 1982, where he resided until his death on February 25, 1985.

2. In March of 1984, agent Marquardt telephoned the insured in Kentucky, at which time the insured informed agent Marquardt that he wanted to change the beneficiaries.

3. Agent Marquardt mailed the insured a change-of-beneficiary form to his address in Kentucky.

4. The insured completed the change-of-beneficiary form in Kentucky, indicating his choice of beneficiaries.

5. The insured executed the change-of-beneficiary form in Kentucky and placed it with his insurance policy, which he kept in Kentucky.

6. The insured died in Kentucky, as a Kentucky resident, on February 25, 1985.

In light of the foregoing respective interests of Utah and Kentucky to this insurance policy and the insured, the court is of the opinion that the interests of Utah are too remote to be controlling. The fact that the insurance policy was purchased by the insured and delivered to him in Utah in 1981, while he was living there is not that significant.

Even less significant is the fact that in 1981, the insured named his then fiancee, Tamara Bartholomew, a Utah resident, as one of the beneficiaries. This fact is immaterial because Tamara Bartholomew was not a party to the insurance contract. The parties to this contract were Fidelity Union and the insured. Utah could have no interest in protecting the rights of a putative beneficiary who may be changed at anytime at the pleasure of the insured and who has no vested rights as a beneficiary unless said beneficiary is still a designated beneficiary at the time of the insured's death.

On the other hand, the contacts the insured had with Kentucky prior to his death give Kentucky a greater interest in this action. For one, the insured resided in Kentucky for approximately three years prior to his death. Obviously, Kentucky has a real interest in protecting the rights of its citizens.

Secondly, the agent contacted the insured in Kentucky; the change-of-beneficiary was mailed to him in Kentucky; and the insured completed this form and executed it in Kentucky.

Finally, as in *Breeding*, the event which triggered the rights and duties of the parties under the insurance contract (i.e., the insured's death) arose in Kentucky.

Consequently, in weighing the respective interests of Utah and Kentucky, the court can only conclude that Kentucky has the greater interest in the outcome of this action; therefore, the choice of law applicable herein should be the substantive law of Kentucky.

## APPLICABLE KENTUCKY LAW

Therefore, the court must now review the relevant substantive law in Kentucky to determine the rights of the parties herein.

Plaintiff points the court to *Vaughn v. Baker*, 438 S.W.2d 517 (Ky.App.1969) wherein Kentucky's highest court held that substantial compliance with the life insurance policy's requirements for change of beneficiaries is sufficient to effect a change of beneficiaries.

The factual background of *Vaughn v. Baker, supra*, was that the insured decided he wanted to change beneficiaries. His agent advised him that to change beneficiaries "it would be necessary to send the

policies to the company." 438 S.W.2d at 518.

Upon that advice, the insured delivered the two insurance policies to his agent's office, which was located in the agent's home. The agent was not there at the time, so the insured spoke with the agent's wife and explained to her why he was there. He gave her all the particulars (i.e., name, age, address and relationship to the insured) about the person he then desired to be the beneficiary of these policies. The agent's wife wrote all of this information down and told the insured that her husband would contact him about his change-of-beneficiary.

Twice during the next two weeks, the agent went to the insured's home to have him execute a change-of-beneficiary form; however, the insured was not at home either time. Ultimately, the insured died before he had executed the change-of-beneficiary form.

The policies provided that a change-in-beneficiary "will not be binding upon the Company unless made in writing and filed at the Home Office."

The *Vaughn* court framed the issued before it as whether the insured has made a genuine, bona fide attempt of a substantial nature to have the beneficiary changed, and whether he makes his informal request in writing or orally has no real significance in resolving the issue. 438 S.W.2d at 519.

In recognizing that Kentucky follows the rule of "substantial compliance", the *Vaughn* court elaborated as follows:

> Kentucky is in the substantial-compliance group of authorities but it appears that our court has been more liberal than most, with the possible exception of *Marshall v. Marshall*, Ky., 399 S.W.2d 487. There the insured did not do all he could have done, but he did everything that he thought and believed was required of him. This court said that was sufficient under the circumstances. Previously, in *Pikeville National Bank & Trust Company v. Shirley*, 281 Ky. 158, 135 S.W.2d 431, we had acknowledged that our view of what constitutes substantial compliance in these cases has been "very lib-

eral," as indicated by numerous decisions cited therein. There an attempted change of beneficiary was held effective although the insured had merely written a letter to the company and had not submitted an application on the company's form nor sent in the policy for endorsement, both of which were required by the terms of the policy to effect a change of beneficiary. It is true that in the *Shirley* case the insured was rendered incapable, by his suicide before receipt of an application form mailed him by the company, of making out an application on the company's form, but there was nothing to have prevented his sending the policy to the company for endorsement. So the court's holding did not require that the insured have done "all that he could do."

The *Vaughn* court held that the person the insured intended to be his new beneficiary was entitled to the proceeds of the life insurance policies. The appellate court noted, as follows:

> ... The failure of Grigg to submit a signed application for a change-of-beneficiary thus seems to have been attributable to the agent's lack of diligence rather than to any conscious noncompliance on Grigg's part.

*Vaughn v. Baker*, 438 S.W.2d at 519–520.

The *Vaughn* court further held, as follows:

> ... It is sufficient to say that there was evidence to warrant a finding that Grigg thought he had accomplished the desired change, this being significant only as it might relate to the question of whether he thought he had done everything he needed to do to effect the change. So we could not hold that the trial court made an erroneous finding of fact.

> It is our conclusion that the trial court correctly adjudged that there had been an effective change-of-beneficiary.

*Id.* at 520.

Plaintiff also relies on *Wickham v. The Prudential Insurance Company of America*, 366 So.2d 951 (La.App.1979), which in

pertinent part, is nearly on all fours with the facts of the action *sub judice.* In *Wickham,* the owner of a life insurance policy and his present wife, who was the newly designated beneficiary, were Louisiana residents, and the change-of-beneficiary form was executed in Louisiana. The former beneficiary, the insured's previous wife, was a resident of Mississippi, where the life insurance policy had been issued and delivered to the insured.

The *Wickham* court held that based on these facts, under the "interest analysis" theory of Louisiana law, Louisiana had a greater interest than Mississippi; therefore, the court chose to apply the law of Louisiana, which followed a rule of strict construction of insurance contracts. It seems that because this contract of insurance provided that a change-of-beneficiary would not be effective until the actual policy itself was endorsed by the insurer, the *Wickham* court, in applying Louisiana law, held that the insured's previous wife in Mississippi was entitled to the proceeds of his life insurance policy. Even though the insured had executed a change-of-beneficiary form and sent it to the insurer, thereby putting the insurer on notice of his desire to change his beneficiary, the *Wickham* court concluded that in following Louisiana's rule of strict construction, to effectively change beneficiaries, the insured was also required to send the insurance policy itself to the insurer for endorsement to record the newly designated beneficiary. It seems that because the insured failed to send the life insurance policy to the insurer, the *Wickham* court was bound to hold that, as a matter of Louisiana law, the insured had failed to change his beneficiary.

In relation to what action by the insured constitutes "substantial compliance" with the policy provisions specifying how a change of beneficiary is to be effectuated, plaintiff points the court to *Aetna Life Insurance Company v. Parker,* 130 F.Supp. 97 (E.D.Mich.1955).

In *Parker,* about one year before the insured's death, it seems he attempted to designate his sister as a co-beneficiary with his wife. The insured made this change on the face of the policy itself; underneath the typewritten name of his wife, the insured printed by hand with a green color lead pencil the name of his sister and then he printed the word "Sign," followed by his signature.

The *Parker* court noted that the group policy provision pertaining to a change of beneficiary provided as follows:

"an employee, whether or not employment shall have terminated, may designate a beneficiary, or change his designation of beneficiary, from time to time by written request filed at the employment office of the Employer or at the Home Office of the Insurance Company. Such designation or change shall take effect as of the date of the execution of such request, whether or not the employee be living at the time of such filing, but without prejudice to the Insurance Company on account of payments made by it before receipt of such request at its Home Office."

*Id.* at 98.

Even though the insured's request was not filed with his employer or the insurance company as dictated by the policy, until after the insured's death, in view of the provision that a change of beneficiary would take effect as of the date of execution of the request, whether or not the insured was living at the time of the filing with the insurance company, the *Parker* court held that the insured had sufficiently complied with the terms of this insurance policy to effectively change his beneficiary from his wife only to both his wife and his sister as co-beneficiaries.

In passing, the *Parker* court noted that the receipt of the request by the insurer prior to the death of the insured was not a requirement of the policy. Furthermore, "That it would not come to the insurer's attention until after the insured's death was expressly immaterial." 130 F.Supp. at 100.

## CHANGE OF BENEFICIARY

■ The insurance policy in the present action before this court contains a provision

advising an insured how to change beneficiaries, which is found in Part 3, "Beneficiaries and Proceeds," on page U–6, and states as follows:

> The beneficiaries may be changed by the owner at any time during the insured's life. To change a beneficiary, a written request must be made to our home office. We may require the policy to record the change. *The request will take effect when signed,* subject to any action we take before receiving it. (emphasis supplied).

In analyzing this provision, it seems that the insured can change beneficiaries at any time before his death by making a written request to Fidelity Union's home office. This section clearly states that the change-of-beneficiary request will take effect when signed by the insured; however, it seems that Fidelity Union is protected from double liability or multiple exposure to claims by numerous beneficiaries if prior to receiving the change-of-beneficiaries form, Fidelity Union pays out proceeds to beneficiaries the insured no longer wished to designate as beneficiaries.

In answering the interrogatories propounded to it by plaintiff, Fidelity Union stated that the insured was not required to deliver the insurance policy to Fidelity Union to record a change of beneficiaries in its records.

An examination of the actions of the insured indicates the following sequence of events:

1. In March of 1984 he communicated his desire to change beneficiaries to agent Marquardt during a telephone conversation with Marquardt. Since Marquardt was an agent for Fidelity Union, this oral communication by the insured to Marquardt was sufficient to put Fidelity Union on notice that he wanted to change beneficiaries.

2. In response to this conversation, Marquardt sent the insured a change-of-beneficiary form, which the insured subsequently completed and executed.

3. Instead of returning this form to either agent Marquardt or Fidelity Union's home office in Dallas, Texas, the insured placed this change-of-beneficiary form with the insurance policy.

4. Subsequent to the insured's death, his father, William B. Blount, Sr., discovered the insurance policy and the change-of-beneficiary form, which was mailed to and received by the Fidelity Union nearly one month after the insured's death.

### DECISION

In synthesizing the primary authority of *Vaughn v. Baker, supra,* and the views expressed in the secondary, but persuasive authorities of *Wickham v. The Prudential Insurance Company of America, supra,* and *Parker v. Aetna Life Insurance Company, supra,* with the facts of the instant action, the court is compelled to conclude that even though the insured did not do all that he could have done to effect a change of beneficiary, as in *Marshall v. Marshall,* 399 S.W.2d 487 (Ky.1966) and *Pikeville National Bank and Trust Company v. Shirley,* 135 S.W.2d 431 (Ky.1939), based on the substantive law of Kentucky, as set out in *Vaughn v. Baker, supra,* as a matter of law, the insured had substantially complied with the requirements of the Fidelity Union insurance policy to effectively change his beneficiaries from Tamara Bartholomew and Jane Blount, as co-beneficiaries, to Jane Blount, as the sole beneficiary.

Fidelity Union did not require the insured to send the insurance policy to the home office for endorsement of the change of beneficiary. Furthermore, Fidelity Union did not specify that it must receive the change-of-beneficiary form prior to the insured's death.

Fidelity Union required the insured to make a written request to its home office. The insured went so far as to complete and execute this written request. The policy plainly states that the change-of-beneficiary request "will take effect when signed." However, the insured merely omitted to return this form to Fidelity Union.

As in *Marshall v. Marshall, supra,* and *Pikeville National Bank and Trust Company v. Shirley, supra,* the insured in this action did not do all that he could have

done to fully comply with the provisions in his insurance policy telling him how to change beneficiaries. However, it appears that William B. Blount, Jr. came closer to complying with the policy provisions than the respective insureds in *Marshall v. Marshall, supra*, and *Pikeville National Bank and Trust Company, supra*. The insureds in these two foregoing cases were held to have substantially complied with the policies in order to effect a change-of-beneficiary; therefore, *a fortiori*, the court must hold that William B. Blount, Jr., the insured herein, has substantially complied with the Fidelity Union policy in his attempt to change his beneficiaries. Based on the fact that the change-of-beneficiary form was found with the insurance policy, it appears that the insured thought he had done everything that was required of him to change his beneficiaries. *Marshall v. Marshall, supra*.

Consequently, the court concludes that plaintiff Jane Blount is the sole beneficiary of this life insurance policy. Therefore, the motion of third party defendant Tamara Bartholomew for partial summary judgment will be denied and the motion of plaintiff Jane B. Blount for summary judgment will be granted.