PHOENIX MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

William Jackson ADAMS, IV and Rosita L. Adams, Defendants.

Civ. A. No. 0:91–3765–19.

United States District Court,
D. South Carolina,
Rock Hill Division.

July 26, 1993.

D. Clay Robinson, of Robinson, McFadden & Moore, P.C., Columbia, SC, for plaintiff.

J. Mark Hayes, II, of Harrison and Hayes, Spartanburg, SC, for defendant William Jackson Adams, IV.

Wilmot B. Irvin, and Blaney A. Coskrey, III, of Glenn, Irvin, Murphy, Gray & Stepp, Columbia, SC, for defendant Rosita L. Adams.

## MEMORANDUM OPINION AND ORDER

SHEDD, District Judge.

Following the death of William Jackson Adams III ("Bill"), both his son, William Jackson Adams IV ("Jack"), and his wife, Rosita Adams ("Rosita"), claimed the proceeds of a policy insuring Bill's life. The insurer, Phoenix Mutual Life Insurance Company ("Phoenix"), filed this action, deposited the proceeds of the policy with the Court, and, pursuant to Rule 22 of the Federal Rules of Civil Procedure, asked the Court to determine the proper beneficiary of the policy. Phoenix was subsequently dismissed from this action.

The Court decided this matter on the basis of the "Trial Record" that was jointly filed by the parties on June 18, 1993.[1] After thoroughly reviewing the Trial Record and carefully considering the applicable legal principles, the Court concludes that Defendant Rosita L. Adams is entitled to judgment in her favor in this action.

## I.  FINDINGS OF FACT

Based on the admissible evidence contained in the "Trial Record," the Court makes the following findings of fact[2] pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

1.  Prior to his death, Bill had purchased two life insurance policies: one from an organization known as Mensa ("the Mensa policy") and one from Phoenix Mutual Life Insurance Company.

2.  In the fall of 1989, Bill showed Jack an insurance policy having a face value of $50,000 and told Jack that he had named Jack as the policy's beneficiary.

3.  The Mensa policy had a face value of $50,000.

4.  The Mensa policy named Jack as beneficiary.

5.  Bill's employer, Texfi Industries Inc. ("Texfi"), provided life insurance to participating employees through a Group Insurance Policy issued by Phoenix.

6.  As a participating employee, Bill obtained both a medical insurance policy and a life insurance policy from Phoenix.

7.  At the time Bill purchased the Phoenix life insurance policy, he designated his son,

---

1.  After the Joint Record was filed, each party filed objections to portions of the Joint Record. To the extent the Court relied upon any evidence to which an objection was filed in determining this action, such objections are addressed *infra*.

2.  To the extent that any finding of fact more properly constitutes a conclusion of law, it shall be deemed as such. Likewise, to the extent that any conclusion of law more properly constitutes a finding of fact, it shall be so deemed.

Jack, as the policy's beneficiary pursuant to the procedures set forth in the policy.

8. The Phoenix life insurance policy contains the following language regarding Bill's right to change the policy's beneficiary:

You may change the beneficiary by written notice to us signed by you. You may file it at any one of the following:

1. [The Insurance Company's] Home Office

2. The office of the Policyholder

3. The home office of your Employer.

Whether or not you are living on the date the notice is received, the change will take effect as of the date it was signed by you. However, the change will be without prejudice to us on account of any payments made by us before we received the notice.

9. After he purchased the Phoenix life insurance policy, Bill married Rosita.

10. Shortly after their honeymoon, Rosita overheard Bill talking on the telephone with an unidentified person.

11. During that conversation, Bill stated that he had just gotten married and that he wanted to change the beneficiary of his life insurance policy to Rosita.

12. A few days after this telephone conversation, Bill travelled to Texfi's home office in Rocky Mount, North Carolina, where he met with a clerk in Texfi's personnel department.

13. Bill told the clerk that he wanted to add his stepdaughter to his medical coverage and change the beneficiary of the Phoenix life insurance policy from Jack to Rosita.

14. Pursuant to the clerk's instructions, Bill signed a Dual Purpose Form, which was the only form used by Texfi at that time to effectuate a change of beneficiary.[3]

15. After Bill signed the form, the clerk signed it as well.

16. Neither Bill nor the clerk, however, filled in the blank line next to the "Change Beneficiary To" designation on the form.

17. At the time Bill signed it, the Dual Purpose Form did not indicate whether Bill intended to change his medical insurance policy, his life insurance policy, or both.

18. As soon as Bill signed the form, the clerk added his stepdaughter to his medical insurance coverage.

19. Because the clerk did not have access to Bill's salary information, however, she could not change the beneficiary of the life insurance policy at that time.

20. Instead, she told Bill that Texfi's Corporate Finance Department would have to record the change of beneficiary.

21. She then sent the Dual Purpose Form to Jerry Holcombe in Texfi's Corporate Finance Department.

22. When Holcombe received the form, he indicated on the form that Bill had changed his medical insurance from single coverage to family coverage.

23. Holcombe, however, did not complete the "Change Beneficiary To" line on the form at that time.

24. Two weeks later, Bill phoned Holcombe to reiterate his desire to change the beneficiary of his life insurance policy from Jack to Rosita.

25. During his telephone conversation with Bill, Holcombe wrote the following note to himself: "3–6–90 Bill Adams—Change beneficiary on life insurance to Roseta [sic] Adams (new wife)."

26. Holcombe, however, did not complete the "Change Beneficiary To" line on the Dual Purpose form at that time.

27. On September 25, 1990, Bill died when the plane he was piloting in the course of his employment with Texfi crashed.

28. Bill's will directed that his debts and funeral expenses be paid and devised the residue of his estate to Rosita.

29. Upon Bill's death, Rosita gave Jack the Mensa policy, which named him as beneficiary.

30. An attorney representing Jack examined the Mensa policy and determined that

---

3. The form appears to be used to change not merely the beneficiary, but one or more of the following: beneficiary, name of the insured, schedule of benefits, earnings, and "other."

due to the circumstances surrounding Bill's death, an exclusion in the policy prevented Jack from obtaining the proceeds of the policy.

31. At some point after Bill's death, someone at Texfi finally wrote Rosita's name on the "Change Beneficiary To" line of the Dual Purpose Form that Bill had signed.

32. Texfi indicated to Phoenix that Rosita was the beneficiary of Bill's life insurance policy, but Phoenix discovered that Bill had never indicated *in writing* his intention to name Rosita as the new beneficiary.

33. Phoenix informed Jack of this fact, and this interpleader action followed.

34. The Phoenix policy is the policy at issue in this action.

35. As administrator of the ERISA plan, Texfi was responsible for maintaining records regarding an insured's attempts to change beneficiaries.

36. For the purposes of diversity of citizenship, Phoenix is a citizen of Connecticut.

37. Jack is a citizen of South Carolina.

38. Rosita is a citizen of South Carolina.

## II. CONCLUSIONS OF LAW

In light of the foregoing findings of fact, the Court makes the following conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue is properly laid in this division pursuant to 28 U.S.C. § 1391.

### A.

■ 3. Rosita argues that, pursuant to the common law doctrine of substantial compliance, Bill changed the beneficiary of his life insurance policy. While Jack also argues

that the doctrine of substantial compliance governs this dispute, he contends that Bill did not substantially comply with the policy's change of beneficiary provisions. Although both parties argue that South Carolina's common law doctrine of substantial compliance governs this dispute, the Court raised the issue of which law governs this action— South Carolina law or federal common law.[4] The Court has determined that federal law is controlling because the various formulations of the doctrine of substantial compliance adopted by the states are pre-empted by ERISA.

■ 4. The Supreme Court explained the test for determining whether state law is pre-empted by ERISA in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Generally, if a state law relates to an employee benefit plan, the law is pre-empted by ERISA.[5] *Id.*, 481 U.S. at 45, 107 S.Ct. at 1552. Because ERISA's pre-emption provisions "are deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern,' " *Id.*, at 45–46, 107 S.Ct. at 1552 (citing *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)), the phrase "relates to" is given "its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1553. ERISA, therefore, pre-empts state law claims based on the maladministration of employee benefit plans even if the state law under which the claims arise bears no inherent connection to ERISA plans. *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (holding that claims of intentional infliction of emotional distress, breach of implied covenant of good faith, breach of contract, and violation of state's

---

**4.** The Court raised this issue during a hearing on the parties' cross-motions for summary judgment and ordered the parties to file additional memoranda on this issue.

**5.** In this context, state law refers to both statutory and decisional law. 29 U.S.C. § 1144(c)(1); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990).

Unfair Trade Practices Act were pre-empted by ERISA).

5. Pursuant to ERISA's "savings clause," however, a state law that relates to an employee benefits plan is saved from pre-emption if the law regulates the business of insurance. *Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1551–52. The Supreme Court has adopted the following criteria to determine whether a law regulates the "business of insurance": (1) "whether the [law] has the effect of transferring or spreading a policy-holder's risk;" (2) "whether the [law] is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the [law] is limited to entities within the insurance industry." *Id.*, at 48–49, 107 S.Ct. at 1553. The Court will apply this pre-emption analysis to determine whether the common law doctrine of substantial compliance is pre-empted by ERISA.

6. Pursuant to the *Pilot Life* analysis, the Court must first determine whether the doctrine of substantial compliance "relates to" an employee benefit plan. Generally, the designation of the beneficiary of an ERISA life insurance policy "relates to" an ERISA plan. *See Metropolitan Life Ins. Co. v. Hanslip*, 939 F.2d 904, 905 (10th Cir.1991); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990); *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 F.2d 275, 278 (7th Cir.) (en banc), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). In *Brown*, for example, the court was required to "determine whether a divorced spouse who was designated as a beneficiary prior to [her divorce from the insured] will still receive the [policy's] Death Benefit despite a provision in the divorce settlement waiving any rights to the benefit." *Id.*, 897 F.2d at 278. The court decided the issue by creating federal common law, holding that state law on the matter was preempted by ERISA. *Accord Hanslip*, 939 F.2d at 906 (state statute by which any portions of an insurance contract in favor of an insured's former spouse are revoked upon insured's divorce from the former spouse relates to an ERISA plan and is pre-empted by ERISA); *McMillan*, 913 F.2d at 311 (state law governing whether a waiver in a divorce settlement relinquished former spouse's right to receive policy's death benefits involves the designation of beneficiaries and therefore "relates to" an ERISA plan).

7. Similarly, the doctrine of substantial compliance involves the determination of which of two or more purported beneficiaries will receive the proceeds of an ERISA life insurance policy. The doctrine has been summarized as follows:

> Since the [insurance] company has no interest in which of the claimants prevail and interpleader is an equitable remedy, the courts in change-of-beneficiary cases have not required literal compliance with the terms of the policy to effectuate a change. Substantial compliance has been deemed sufficient. The philosophy behind this rule is that the right of the insured to change beneficiaries should be given effect over procedural technicalities. The elements necessary to show substantial compliance have been stated in various ways. The elements involve "a combination of intent to make the change and positive action towards effecting that end."

*Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 578 A.2d 98, 100 (1990). *Accord* 19 Couch on Insurance § 82:76 at 821 (2d ed. 1984) ("A change of beneficiary is effective where the insured has reserved the right to make a change and it is clear that such was the insured's intent and that he had taken reasonable steps to bring about such change."). Application of the doctrine to the facts of the instant case will determine whether Jack or Rosita is the beneficiary of a policy which is governed by ERISA. The doctrine, therefore, clearly involves the designation of the beneficiary of an ERISA policy. Accordingly, the doctrine "relates to" an employee benefit plan.[6]

---

6. Rosita argues that the instant case is controlled by *Peckham v. Gen. State Mutual of Utah*, 964 F.2d 1043 (10th Cir.1992), in which the Tenth Circuit held that ERISA does not pre-empt the substantial compliance doctrine as established by state common law. The *Peckham* court based its decision, in part, on its observation that "the doctrine of substantial compliance does not materially modify a plan...." *Id.*, 964 F.2d at 1053. The test of pre-emption, however, is not whether a state law modifies a plan, but whether a state law "relates to" a plan. Moreover, application of the doctrine of substantial compliance in situations such as the one at bar determines

8. The doctrine of substantial compliance is therefore pre-empted by ERISA unless it regulates insurance. *See Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553. The doctrine, however, does not transfer or spread a policyholder's risk. Moreover, it is not limited to entities within the insurance industry because the doctrine of substantial compliance is merely a specific application of the general rule of contracts that "if a party has substantially performed, it follows that any breach he may have committed is immaterial." *Peckham v. Gen. State Mutual of Utah,* 964 F.2d 1043, 1052 (10th Cir.1992). Finally, the doctrine is not an integral part of the policy relationship between the insurer and the insured. The terms of the insurance policy, not the doctrine of substantial compliance, determine whether the policyholder may change beneficiaries and, if so, the procedure the policyholder must follow to effectuate the change. The doctrine of substantial compliance merely provides that in the event the policy sets forth a method for changing the beneficiary, the insured need not literally comply with every aspect of that method in order to effect such a change.

9. The doctrine of substantial compliance, therefore, does not regulate the business of insurance. *Cf. Hanslip,* 939 F.2d at 907 (state statute by which any portions of an insurance contract in favor of an insured's former spouse are revoked upon insured's divorce from the former spouse does not regulate insurance). Accordingly, it is pre-empted by ERISA. *Cf. Hammond v. Fidelity and Guaranty Life Ins. Co.,* 965 F.2d 428, 430 (7th Cir.1992) (state laws governing insurance policy interpretation are pre-empted by ERISA); *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1439 (9th Cir.1990) (interpretation of ERISA insurance policies is governed by a uniform federal common law); *McMahan v. New England Mutual Life Ins. Co.,* 888 F.2d 426, 429 (6th Cir.1989) (because the rule that ambiguous language in an insurance policy is construed against the insurer is merely a specific application of the general rule that ambiguous language in a contract is construed against the party that prepared it, the rule does not regulate insurance and the interpretation of ambiguous language in an ERISA policy is a matter of federal common law); *Sampson v. Mutual Benefit Life Ins. Co.,* 863 F.2d 108, 110 (1st Cir.1988) (interpretation of ERISA policy provisions is governed by federal common law, not by state law); *Northeast Dep't ILG-WU Health and Welfare Fund v. Teamsters Local No. 229 Welfare Fund,* 764 F.2d 147 (3rd Cir.1985) (state laws regarding "other insurance" clauses do not regulate insurance and are pre-empted by ERISA); *Tesch v. General Motors Corp.,* 724 F.Supp. 1251 (E.D.Wis.1989), *reversed on other grounds,* 937 F.2d 359 (7th Cir.1991) (doctrine of substantial compliance is pre-empted by ERISA).

10. Although ERISA pre-empts the doctrine of substantial compliance, the Act

---

which of two or more competing claims by purported beneficiaries will be honored. Even under a *Peckham* analysis, therefore, it is difficult to understand how the determination of who receives the proceeds of a plan is not material to an ERISA plan.

The *Peckham* court also stated that the doctrine of substantial compliance "does not denigrate from an ERISA plan in a way that is significant enough to implicate the concerns underlying ERISA preemption." *Id.* As discussed *infra,* however, the application of different states' formulations of the doctrine of substantial compliance to the same set of facts can lead to inconsistent results. Hence the administrator of a nationwide plan presented with two separate but identical sets of facts arising in different states might be required to pay life insurance proceeds to the "original" beneficiary in one state and to the "new" beneficiary in the other state. Application of the doctrine, therefore, certainly implicates the concern of uniformity which underlies ERISA pre-emption. *See Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992) ("One of Congress' purposes in enacting ERISA was 'to ensure that plans and plan sponsors would be subject to a *uniform body* of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.'") (emphasis added) (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

Finally, in the portion of the *Peckham* opinion which holds that the doctrine is not pre-empted by ERISA, the court cites neither the *Pilot Life* pre-emption analysis nor its own decision in *Hanslip* that "because the designation of beneficiaries to [an ERISA] life insurance policy 'relates to' the ERISA plan, the preemption provision applies." *See Hanslip,* 939 F.2d at 906. The Court, therefore, respectfully declines to follow the *Peckham* decision.

contains no provisions relating to changing beneficiaries. When ERISA fails to address an issue which is pre-empted, both the Supreme Court and the Fourth Circuit have authorized federal courts to "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 990 (4th Cir.1990); *United States Steel Mining Co. v. District 17, United Mine Workers of America,* 897 F.2d 149, 152 (4th Cir.1990). In developing federal common law pursuant to ERISA, however, courts "are constrained to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA." *United States Steel Mining Co.,* 897 F.2d at 153. One of Congress' purposes in enacting ERISA was "'to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.'" *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992) (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). Another purpose of ERISA is "to promote the interests of employees and their beneficiaries in employee benefit plans ... and to protect contractually defined benefits." *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1185 (4th Cir.1989) (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)).

■ 11. The Court, therefore, must determine whether these dual purposes of ERISA would best be served by the adoption of a uniform federal doctrine of substantial compliance or by requiring that an insured strictly comply with the terms of an ERISA policy's change of beneficiary provisions. The adoption of either rule as federal common law would ensure that plans and plan sponsors would be subject to a uniform body of benefits law regarding changing the beneficiary of an ERISA policy and would, therefore, protect the sponsor's interests. Requiring strict compliance with an ERISA policy's change of beneficiary provisions, however, would not promote the interests of the insured. Such a requirement would, in many instances, require the payment of a policy's proceeds to someone other than the person the insured clearly intended to receive the proceeds. Conversely, adoption of a federal doctrine of substantial compliance would help ensure that the proceeds of an ERISA life insurance policy are paid pursuant to the clearly manifested intentions of the insured. Adopting the doctrine, therefore, would protect the interests of both a plan's sponsor and a plan's insureds.

■ 12. Moreover, when an insured reserves the right to change the beneficiary of a life insurance policy, the named beneficiary obtains no vested interest in the proceeds of the policy prior to the death of the insured. *See generally Kucera v. Metropolitan Life Ins. Co.,* 719 F.2d 678 (3rd Cir.1983); *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155 (5th Cir.1976); *Horne v. Gulf Life Ins. Co.,* 277 S.C. 336, 287 S.E.2d 144 (1982). Adoption of the doctrine of substantial compliance as federal common law, therefore, would not interfere with a beneficiary's contractually defined benefits. Further, application of the doctrine would not subject plan administrators to multiple liability because "an insurer discharges its liability under an insurance policy by making good faith payments to a purported beneficiary without notice of any competing claims." *Crosby v. Crosby,* 986 F.2d 79, 84 (4th Cir.1993). If nothing in the administrator's file puts the administrator on notice that an insured has attempted to change a policy's beneficiary, the administrator is not subject to liability for payments made to the beneficiary of record. *See McMillan,* 913 F.2d at 312. If, however, the administrator's records indicate that an insured attempted to change a policy's beneficiary, the administrator would be on notice of competing claims and would have to determine to whom the benefits were to be paid whether that decision is based on strict compliance with the terms of the policy or the federal common law of substantial compliance.

13. Finally, most federal courts that have addressed the issue have applied some form of the doctrine of substantial compliance to the change of beneficiary provisions of an ERISA policy. *See, e.g., Peckham,* 964 F.2d

1043; *Aetna Life Ins. Co. v. Weatherford,* 924 F.2d 1057 (6th Cir.1991) (unpublished) (available on Westlaw); *Tesch,* 724 F.Supp. 1251; *Krishna v. Colgate Palmolive Co.,* 1992 WL 176633, No. 90 Civ. 4116 (S.D.N.Y. 1992).

14. The Court, therefore, finds that a uniform federal law of substantial compliance is necessary to promote the purposes of ERISA. A thorough review of the applicable authorities reveals that although some federal courts have adopted a federal common law of substantial compliance in the ERISA context, these courts have merely applied the underlying state's law of substantial compliance to the facts an of ERISA case.[7] Merely adopting the underlying state's law on substantial compliance, however, does nothing to ensure that plans and plan sponsors are subject to a uniform body of benefit law because the application of the doctrine of substantial compliance varies from state to state.

15. South Carolina, for instance, recognizes a doctrine of substantial compliance that closely resembles the doctrine of impossibility of performance. In *Wilkie v. Philadelphia Life Ins. Co.,* 187 S.C. 382, 197 S.E. 375 (1938), for example, a life insurance policy allowed the insured to change the beneficiary by requesting the change in writing and returning the policy to the company for indorsement. Two days before undergoing surgery, the insured informed the insurance company in writing that she wished to change the policy's beneficiary. Following her surgery, the insured was physically unable to leave the hospital and was, therefore, unable to retrieve the policy from the lock box at her bank. She did, however, complete and mail a change of beneficiary form the insurance company had sent her upon receipt of her letter. The insured died two weeks later, never having mailed the policy to the company for indorsement.

16. The South Carolina Supreme Court held that the insured had not substantially

complied with the policy's change of beneficiary provisions. The court stated that

> the change of beneficiary has been accomplished where [the insured] has done all that he could do to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the [insurance] company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible.

> \*      \*      \*      \*      \*      \*

> [W]hile [the insured] was physically unable to leave the hospital and go to the South Carolina National Bank in the city of Columbia to get the policy from her safety deposit box there, she was ... "surrounded by all reasonable and necessary conveniences and attendants, and with presence of mind by which she could have caused the policy to be forwarded to the company." In view of these facts, it can hardly be said that the insured, by reason of circumstances beyond her control, was unable to obtain the policy from her lock box and send it to the company.

*Id.,* 197 S.E.2d at 382. *See also York v. Sumner,* 195 S.C. 413, 11 S.E.2d 864, 866 (1940) (an insured has substantially complied with the change of beneficiary provisions of a life insurance policy only "where he has done all that he could to comply with the provisions of the policy...."). Under this application of the substantial compliance doctrine, Bill did not effect a change of beneficiary from Jack to Rosita because he never informed Phoenix or Texfi *in writing* of his desire to make the change[8] and nothing rendered him incapable of doing so.

17. Other jurisdictions, however, have adopted less exacting standards in applying the substantial compliance doctrine. *See Metropolitan Life Ins. Co. v. Barnes,* 770

---

7. Federal courts are authorized to look to state common law in creating federal common law. *See Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992).

8. The only writing signed by Bill was the Dual Purpose Form. At the time he signed the form,

however, the "Change Beneficiary To" line on the form was blank. Bill, therefore, never presented Phoenix or Texfi with a written document which stated that he wanted to name Rosita as his beneficiary.

F.Supp. 1393, 1397 (E.D.Mo.1991) (An insured must intend to change his beneficiary and must do everything possible under the circumstances to effectuate the change. The courts, however, will relax the second factor in light of clear evidence of the insured's intent.) (applying Missouri law); *Blount v. Bartholomew,* 714 F.Supp. 252, 257 (E.D.Ky. 1988) *aff'd,* 869 F.2d 1488 (6th Cir.1989) (An insured does not have to do all that he could have done, but he must have done everything that he thought and believed was required of him.) (applying Kentucky law); *Aetna Life Ins. Co. v. Hayes,* 324 F.2d 759, 761 (6th Cir.1963) (An insured must do everything reasonably possible to effect a change in beneficiary.) (applying Arkansas law).

■ 18. Having considered these various formulations of the doctrine as a guide in adopting a federal common law of substantial compliance, the Court has determined that South Carolina's formulation of the doctrine should not be adopted as federal common law. South Carolina's approach borrows heavily from the doctrine of impossibility of performance, which excuses a material breach of contract because compliance with the terms of the contract is objectively impossible. *See Florida Power and Light Co. v. Westinghouse Electric Corp.,* 826 F.2d 239 (4th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 890 (1988). The doctrine of substantial compliance, however, is based not on the doctrine of impossibility of performance, but instead on the doctrine of substantial performance. *Peckham v. Gen. State Mutual of Utah,* 964 F.2d 1043, 1052 (10th Cir.1992). Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused not because compliance with the terms of the contract is excused not because compliance with the terms of the contract is objectively impossible, but because the actual performance is so similar to the required performance that "any breach that may have been committed is immaterial." *Id.*

19. The federal common law of substantial compliance should mirror the doctrine of substantial performance upon which it is based. It should also attempt to promote the insured's interest in having the proceeds of a life insurance policy paid to his or her intended beneficiary while respecting the fact that the appropriate procedure for changing the policy's beneficiary is designated in the policy itself. The Court, therefore, finds that pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy. *See generally Metropolitan Life Ins. Co. v. Barnes,* 770 F.Supp. at 1397; 19 Couch on Insurance § 82.76 at 871 (2d ed. 1984). Whether substantial compliance exists, therefore, is necessarily dependent on the specific facts of a given case. It is this test that the Court will apply to the facts of this action in determining whether Rosita or Jack is the beneficiary of the policy.

## B.

■ 20. Prior to determining whether Bill substantially complied with the policy's change of beneficiary provisions, however, the Court must determine whether certain evidence presented by Rosita is admissible. First, Jack argues that Rosita's testimony concerning the telephone conversation during which Bill expressed his desire to change the beneficiary of his life insurance policy is barred by South Carolina's Dead Man's Statute. When state law supplies the rule of decision in a case, the competency of a witness is determined in accordance with state law. F.R.E. 601. This action, however, is governed by federal common law. Because federal law supplies the rule of decision in this action, South Carolina's Dead Man's Statute is not applicable and does not bar Rosita's testimony. *See Longoria v. Wilson,* 730 F.2d 300, 304 (5th Cir.1984).

■ 21. Moreover, Rosita's testimony is admissible over Jack's hearsay objections. Bill's statements clearly indicate a desire to change the beneficiary of his life insurance policy. The statements are therefore admissible pursuant to Rule 803(3) of the Federal Rules of Evidence as statements of Bill's "then existing state of mind," which includes

his "intent, plan, [or] motive" to change the policy's beneficiaries. *United States v. Hartmann,* 958 F.2d 774, 783 (7th Cir.1992); *First Penn–Pacific Life Ins. Co.,* No. 85 C 6432, 1986 WL 2535 *3 n. 4 (N.D.Ill. Feb. 11, 1986).

22. Although Rosita's testimony does not contain inadmissible hearsay, to be admissible the testimony must be relevant to a material issue in the case. F.R.E. 401, 402. Because nothing in the record suggests that Bill was speaking to an agent of Phoenix or Texfi, his statements do not tend to prove that he attempted to change the beneficiary of his life insurance policy in substantial compliance with the terms of the policy. The statements, however, are relevant to Bill's intention to change his beneficiary. Moreover, these statements may be used to prove subsequent conduct in conformity with Bill's stated intention to change his beneficiary. *See Mutual Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *United States v. Jenkins,* 579 F.2d 840, 842–43 (4th Cir.) *cert. denied,* 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 616–17 n. 2 (4th Cir.1985) (Winter, C.J., concurring). Rosita's testimony, therefore, is admissible.

23. Jack next argues that a letter to Jack from Barbara Gregory, an agent of Phoenix, dated October 31, 1990, is inadmissible hearsay. This letter outlines the actions Bill took to change the beneficiary of his policy from Jack to Rosita and explains that he did not comply precisely with the policy's change of beneficiary provisions. This document contains hearsay within hearsay. First, the letter contains the implicit statement that "Bill said he wanted to change the beneficiary of his life insurance policy." This statement is admissible as a statement of Bill's intent pursuant to Rule 803(3). *See supra.*

24. Second, the letter itself is arguably hearsay. In its response to Rosita Adams' Requests for Admission, however, Phoenix admitted that this letter is "an authentic letter written by Barbara Gregory, an agent of Phoenix, on or about October 31,

1990" and that the letter "is a record of regularly conducted business activity within the meaning of Rule 803(6), Federal Rules of Evidence." Nothing in the record disputes this admission. In a letter to the Court filed on June 18, 1993, Jack concedes that this document is a business record but argues that it is inadmissible because it lacks indicia of trustworthiness.

25. The Court, however, finds that neither the source of information nor the method or circumstances of preparation indicate lack of trustworthiness. *See* F.R.E. 803(6). As administrator of the ERISA plan, Texfi was responsible for informing Phoenix of Bill's attempt to change his beneficiary. All statements made by Texfi agents to Phoenix agents regarding Bill's efforts were therefore made in the ordinary course of business and pursuant to a duty to report. Moreover, the information contained in the letter is corroborated by the Dual Purpose Card signed by Bill and dated February 22, 1990, the deposition testimony of Jerry Holcombe, and the deposition testimony of Rosita. Finally, nothing in the record contradicts any of the letter's statements. The Court finds that the information contained in the letter is trustworthy and that the letter is admissible as a business record pursuant to Rule 803(6).

26. Finally, Jack objects to the Court's consideration of Holcombe's handwritten note which states "3–6–90 Bill Adams—Change beneficiary on life insurance to Roseta [sic] Adams (new wife)." The note's implicit statement that Bill indicated a desire to change beneficiaries is admissible pursuant to Rule 803(3). Moreover, the uncontradicted evidence shows that Holcombe made the note "substantially contemporaneous with" the telephone conversation he had with Bill. Holcombe Depo. at 25. The note, therefore, is admissible as a present sense impression pursuant to Rule 803(1) of the Federal Rules of Evidence. *See e.g. United States v. AT & T,* 516 F.Supp. 1237 (D.D.C. 1981) (contemporaneous memoranda reflecting discussions in meetings and telephone discussions meet admissibility requirements of Rule 803(1)).[9]

---

9. Even if the note itself is not admissible, Hol-

combe's deposition testimony concerning the

## C.

27. In applying the federal common law of substantial compliance with an ERISA policy's change of beneficiary provisions to the facts of this case, the Court must first determine whether Bill intended to change the beneficiary of the Phoenix policy from Jack to Rosita. In support of his argument that Bill had no such intention, Jack states that his father would never have intended to leave Jack with nothing upon his death. Because Bill's will left the residue of his estate to Rosita, Jack argues that Bill certainly intended to provide for him by naming him as beneficiary of the Phoenix policy. This argument, however, overlooks the fact that Bill named Jack as the beneficiary of the Mensa policy. Bill, therefore, did attempt, albeit unsuccessfully, to provide for Jack upon his death.

28. Moreover, the uncontroverted evidence shows that shortly after his honeymoon, Bill was heard to say that he wished to change the policy's beneficiary from Jack to Rosita. A few days later, Bill appeared in person at Texfi's home office and told the clerk in the personnel department that he wanted to make this change. Shortly thereafter, Bill repeated his desire to name Rosita as the policy's beneficiary to Holcombe. Nothing in the record contradicts this evidence or suggests that Bill did not wish to name Rosita as the policy's beneficiary. The Court, therefore, finds that Bill intended to change the beneficiary of the Phoenix policy from Jack to Rosita.

29. The second prong of the federal common law doctrine of substantial compliance requires proof that Bill undertook positive action which for all practical purposes was similar to that required by the change of beneficiary provisions of his life insurance policy in order to change the policy's beneficiary from Jack to Rosita. The policy allowed Bill to change the beneficiary by filing a signed, written notice at the home office of his employer, Texfi. Although Bill never filed such a written notice, he personally appeared at Texfi's home office in Rocky Mount, North Carolina. In the presence of a personnel clerk at Texfi's home office, Bill signed a form which was used at the time to change beneficiaries of life insurance policies. Moreover, at the time he signed the form he made it clear to the clerk that he was signing the form in order to change the beneficiary of his life insurance policy from Jack to Rosita. The clerk then informed Bill that Holcombe would make the desired change.

30. This is not, therefore, a situation in which an insured mailed a signed but otherwise blank change of beneficiary form to his employer or merely called his employer and asked that a change of beneficiary be effected. Bill appeared in person at Texfi's home office, unequivocally stated to the person who handled such changes that he wanted to change the beneficiary of his life insurance policy, and clearly named the new beneficiary. A written notice filed with Texfi would not have communicated this information with more clarity or more certainty. Moreover, two weeks after Bill was informed that Holcombe would effectuate the change of beneficiary, he called Holcombe to make sure that the change had occurred. It is clear, therefore, that Bill did not change his mind about naming Rosita as the policy's beneficiary.

31. The Court, therefore, finds that Bill undertook positive action which was for all practical purposes similar to that required by the terms of his life insurance policy to change the policy's beneficiary from Jack to Rosita. Because Bill's actions satisfy both prongs of the federal common law doctrine of substantial compliance, the Court finds that Rosita is entitled to the proceeds of the insurance policy at issue.

### ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that **JUDGMENT BE ENTERED** in favor of defendant Rosita L. Adams as to all claims. **IT IS FURTHER ORDERED THAT** the Clerk of Court **DISBURSE** the funds deposited with the Clerk of Court by plaintiff-interpleader Phoenix Mutual Life Insurance Company, together

---

conversation memorialized by the note is certainly admissible.

with accrued interest, to defendant Rosita L. Adams.

**IT IS SO ORDERED.**