**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2011

No. 11-30120

Lyle W. Cayce
Clerk

DANA D. CAPLES,

Plaintiff-Appellant,

versus

U.S. FOODSERVICE, INC.; HEWITT ASSOCIATES, LLC,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:08-CV-4878

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Dana Caples ("Caples") appeals a summary judgment in favor of U.S.
Foodservice, Inc. ("USF"), and Hewitt Associates, LLC ("Hewitt"; collectively,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

1

No. 11-30120

"defendants"), alleging that defendants undermined her life insurance claim in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Because the plan administrator relied on substantial evidence when it determined that Caples was not the beneficiary of her deceased ex-husband's policy, we affirm on the ground that Caples lacks standing to sue under ERISA.

I.

Caples married David Caples ("Mr. Caples") in 2002. In 2004, Mr. Caples was hired as a driver for defendant USF. As a USF employee, he was entitled to various insurance benefits, including group life insurance. When his life insurance coverage took effect in 2004, he had designated Caples as his primary beneficiary and, as secondary beneficiary, his son Daniel Caples ("Daniel"), who is not Caples's biological child; he also elected spousal life insurance coverage for Caples and child life insurance for Daniel. In February 2005, the couple separated.

Later that year, Hewitt assumed responsibility for administering USF's benefits management system, taking over from a previous third-party manager. USF implemented a new management system and required its employees to contact Hewitt to make benefits decisions afresh. The change in systems, coinciding with the change in system managers, meant that USF employees specifically had to elect coverage under their employer's various benefits offerings, including life insurance; those who failed to contact Hewitt would receive no coverage. Employees had the option to designate beneficiaries for life insurance but instead could elect life insurance without designating a beneficiary, in which case the benefit would be paid to the first of the following: "(a) surviving spouse; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate." PRUDENTIAL INS. CO. OF AM., U.S. FOODSERVICE, INC.: NON-UNION EMPLOYEES 42 (2007).

No. 11-30120

As of January 2006, Mr. Caples had elected various coverages for himself and Daniel, including life insurance, under Hewitt's new benefits management system. He did not elect life insurance coverage for Caples and did not designate a beneficiary for his own life insurance.

The couple's separation ended in divorce in March 2006. The divorce did not terminate their relationship, however: they lived together from May 2006 through January 2007, they revived their romantic relationship the following summer, and in August Mr. Caples even proposed re-marriage. Mr. Caples died in September 2007 of an apparent suicide.

As of his death, Mr. Caples had elected various coverages for himself and Daniel, including life insurance; he could not elect coverage for Caples, because she was no longer his wife. Though the couple may have renewed their relationship before Mr. Caples died, he never designated a life insurance beneficiary after failing to do so in Hewitt's new system. Prudential Insurance Company of America ("Prudential"), the life insurance plan administrator,[1] was informed by USF through Hewitt that Mr. Caples had died without a designated beneficiary. According to its written policy, Prudential paid $56,000 to Daniel as Mr. Caples's sole surviving child; because of the divorce, he had no surviving spouse.

Caples sued Prudential in state court, and Prudential removed to federal court. Caples amended to add USF and Hewitt as defendants and dismissed Prudential. The district court then had Caples submit her claim to Prudential for administrative review. Based on the evidence filed by all parties, Prudential found that it was correct to pay Daniel the $56,000 at issue. Her administrative remedies under ERISA exhausted, Caples returned to the district court with her

---

[1] Effective January 1, 2007, USF had canceled its life insurance contract with Hartford Insurance and contracted with Prudential to provide those benefits instead. Unlike USF's earlier change of benefits managers to Hewitt, this change apparently necessitated no action by USF employees. The change from Hartford to Prudential does not appear to have affected the order in which the insurer pays out benefits where no beneficiary was on record at death.

No. 11-30120

complaint; defendants renewed their motion for summary judgment. The district court granted the motion and dismissed Caples's claims with prejudice.

II.

A summary judgment is reviewed *de novo*, under the same standard applied by the district court. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 301 (5th Cir. 1993). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with specific facts showing a genuine factual issue for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

A.

Caples must first establish her standing to sue under ERISA. "We have recognized that standing is essential to the exercise of jurisdiction and is a 'threshold question … [that] determines the power of the court to entertain the suit.'" *Coleman v. Champion Int'l Corp./Champion Forest Prods.*, 992 F.2d 530, 532 (5th Cir. 1993) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). ERISA

No. 11-30120

gives a plan beneficiary standing to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).[2]  The law defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).

Caples has standing under ERISA if she can establish that she is a beneficiary.  We now turn to that question.

B.

The insurance plan in effect at Mr. Caples's death gives Prudential sole discretion to interpret the insurance contract, to make factual findings, and to determine eligibility for benefits.  PRUDENTIAL INS. CO. OF AM., U.S. FOODSERVICE, INC.: NON-UNION EMPLOYEES 9 (2007).  Under ERISA, if a plan gives discretionary authority to a plan administrator to determine beneficiaries, that factual determination is reviewed for abuse of discretion.  *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009).  "In applying the abuse of discretion standard to an administrator's factual determinations we analyze whether the administrator acted arbitrarily or capriciously."  *Id.* at 213.  "If the determination is supported by substantial evidence, it is not arbitrary and capricious."  *Id.*  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).

---

[2] The same provision also grants standing to plan participants, defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C. § 1002(7).  Caples does not claim to be a participant.

No. 11-30120

## C.

Applied at the summary judgment stage, ERISA's substantial-evidence standard of review for plan administrators' factual determinations means that Caples carries a heavy burden: She must not merely show evidence demonstrating a genuine issue as to who is the rightful beneficiary. Instead, she must show there was not substantial evidence in the administrative record supporting Prudential's determination, such that its finding for Daniel was an abuse of discretion.[3] Caples has not carried her burden.

The evidence in the administrative record supporting Prudential's determination is indeed substantial. In October 2005, Hewitt was retained by USF to take over USF's employee benefits management system from the previous

---

[3] Caples's brief asks this court to modify its evidentiary standard by crafting and applying a federal common-law doctrine of substantial compliance, under which

> an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994) (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 388 (D.S.C. 1993). Applying that doctrine, Caples argues that her ex-husband never substantially complied with the change-of-beneficiary procedure supposedly needed to remove her as a beneficiary. Assuming *arguendo* that substantial compliance applies to insured persons' change-of-beneficiary procedures, however, its application does Caples no good. When Hewitt became USF's new benefits manager, Mr. Caples was notified that he would need to make insurance elections and beneficiary designations anew or lose coverage altogether. Against that backdrop, his affirmative selection of coverage for himself and his son (as before Hewitt's take-over), his failure to cover his now-separated wife (unlike before), and his failure to designate any beneficiaries for his life insurance (unlike before) all suggest his intent to remove Caples as beneficiary, a change he effected by his contact with Hewitt's benefits management system.

This court indeed evaluates challenges to ERISA procedures under a substantial-compliance standard, *see Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005) (per curiam), but we have applied the standard only to evaluate whether plan administrators have substantially complied with the requirements under 29 U.S.C. § 1133, namely, whether they give reasons for denying claims and whether they offer opportunities for appeal. We have no need to decide the applicability of the substantial-compliance standard here.

6

No. 11-30120

manager. As part of the transition, USF's employees were required to log into Hewitt's new automated benefits election system or call the USF benefits center administered by Hewitt; employees would no longer receive benefits if they did not contact Hewitt by a certain time. To preserve coverage, then, a USF employee had to contact Hewitt's system, specifically elect health, life, and other insurance, and choose whether to cover himself alone or to cover family as well. Most importantly, he also had the option to designate a beneficiary for his life insurance or to leave the designation blank; Hewitt's automated system did not force an employee to designate a beneficiary.

Hewitt's records, as supplied to Prudential, indicate that between October 2005 and January 1, 2006, Mr. Caples elected various insurance benefits for himself and his son, including life and health insurance. He did not choose any benefits for Caples, however, from whom he was separated at the time and would subsequently divorce. He did not designate any beneficiary for his life insurance.

The above evidence from the administrative record is manifestly "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dutka*, 573 F.3d at 213 (internal quotation marks omitted). Mr. Caples complied with the requirement to contact Hewitt and elect insurance coverage. In contacting Hewitt, he had opportunities to choose coverage for Caples and to designate her as his beneficiary, but he did not, unlike his choices in the benefits management system operated by Hewitt's predecessor, in which he had Caples covered and designated as the primary beneficiary of his life insurance.

The difference is that, apparently, between Mr. Caples's last contact with Hewitt's predecessor's system and his first contact with Hewitt's, he and Caples separated. Although there is no direct evidence of Mr. Caples's knowingly deciding not to designate Caples, the showing that he made other conscious decisions in the same benefits system, combined with the showing that Mr. Caples had

7

reason not to designate Caples (namely, their separation), is indeed evidence substantial enough to support Prudential's determination that Daniel Caples was the proper beneficiary.

Caples's proffered evidence complicates defendants' showing slightly but comes nowhere close to demonstrating that defendants have failed to show that the plan administrator's beneficiary determination was supported by substantial evidence, even when Caples's evidence is viewed in the most favorable light possible.[4] Caples offers three major attacks on the weight of the evidence: the designation of Caples in the (discontinued) pre-Hewitt system; the absence of evidence directly demonstrating that Mr. Caples consciously declined to designate Caples when using Hewitt's system; and defendants' failure to corroborate the sworn affidavits of their records custodians.

At most, these could be read to demonstrate, respectively, that defendants did not transmit Mr. Caples's outdated designation of Caples; Mr. Caples did not deliberately decline to designate Caples; and defendants have not done everything possible to eradicate doubt about Mr. Caples's responsibility for the records. But these putative showings do not impugn the latest electronic records generated by Mr. Caples's interaction with Hewitt's benefits system as doing something other than genuinely recording his insurance choices and non-choices.

Crucially, Caples has given the court no reason why the electronic records offered by defendants, included in the administrative record, are not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dutka*, 573 F.3d at 213 (internal quotation marks omitted). The defen-

---

[4] For the first time on appeal, Caples alleges "a clear and apparent conflict of interest by Prudential serving as claims administrator, and the provider of the group life insurance policy provided to David Caples' employer." This court will not consider evidence or arguments that were not presented to the district court. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc).

No. 11-30120

dants have shown that there was evidence in the administrative record substantial enough to make Prudential's ultimate determination reasonable. Caples has not shown otherwise.

## III.

Given Prudential's decision, supported by substantial evidence, that Daniel is the rightful beneficiary of Mr. Caples's life insurance benefits, Caples is not a beneficiary under ERISA. Consequently, she lacks standing to bring a civil action under § 1132(a)(1)(B), under theories of breach of contract/fiduciary duty, negligence, or anything else.[5]

AFFIRMED.

---

[5] Caples appears to have dropped her state law claims entirely, "[h]aving determined [as her brief states] that ERISA preempts state law with regard to the determination of the beneficiary of life insurance proceeds."